UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :
HAMILTON SPECIALTY INSURANCE COMPANY,    :
INC.,                                    :
                                         :            19cv5548 (DLC)
                          Plaintiff,     :
                                         :            OPINION AND ORDER
              -v-                        :
                                         :
KINSALE INSURANCE COMPANY,               :
                                         :
                          Defendant.     :
                                         :
---------------------------------------- X

APPEARANCES

For plaintiff:
Joshua Ferguson
Jeannette L. Dixon
Manning & Kass, Ellrod, Ramirez, Trester LLP
One Battery Park Plaza, Fl. 4
New York, NY 11238
(242) 858-7769

For defendant:
Joseph G. Silver
Kyle M. Medley
Hailey J. Barthel
Hinshaw & Culbertson LLP
800 Third Ave, Fl. 13
New York, NY 10022
(212) 471-6217

DENISE COTE, District Judge:

     Plaintiff Hamilton Specialty Insurance Company ("Hamilton")

commenced this suit on June 13, 2019, seeking a declaratory

judgment that Hamilton is entitled to reimbursement from Kinsale

Insurance Company ("Kinsale") for a share of the settlement and

defense costs that Hamilton paid on behalf of Sway Lounge, LLC

d/b/a Paul's Casablanca ("Sway").  This Opinion presents the
Court's findings of fact and conclusions of law following a
bench trial on submission.  For the reasons stated below,
judgment is granted to Kinsale.

## Background

The following constitutes the Court's findings of fact.
This insurance dispute arises out of state and federal court
actions brought by Sylvia Eliasson, a former bottle server at
Sway, against Sway; Sway's owners, Paul Sevigny and Brian
McPeck; and Sway's General Manager, Joshua Menendez.  See
Complaint, Eliasson v. Sway Lounge, LLC d/b/a Paul's Casablanca,
No. 155170/2018 (Sup. Ct. June 3, 2018) (the "State Court
Action"); Complaint, Eliasson v. Sway Lounge, LLC d/b/a Paul's
Casablanca, No. 18cv11895 (DLC) (S.D.N.Y. Dec. 18, 2019) (the
"Federal Court Action") (together with the State Court Action,
the "Underlying Action").

I.   The Underlying Action

The complaint in the Underlying Action alleged the
following.  After inviting Eliasson to share an afterwork glass
of champagne on the night of October 7, 2017, Menendez drugged
and sexually assaulted Eliasson.  A few weeks later, when
Eliasson confronted Menendez about the incident, he refused to
discuss what he had done.  On March 10, 2018, Eliasson contacted
Sevigny and McPeck to set up a meeting to report the incident.

A few days prior to their scheduled meeting of March 20, Sevigny and McPeck requested that Eliasson sign a backdated non-disclosure agreement, which she declined to do.  At their March 20 meeting, Sevigny and McPeck informed Eliasson that they would investigate the matter and that, in the meantime, she would not work shifts with Menendez.  As a result, Eliasson was deprived of her normal and most profitable weekend shifts.

To investigate Eliasson's allegations, Sevigny and McPeck eventually hired a company that had no experience conducting workplace investigations into sexual assault.  Its investigator was unprofessional in his interactions with Eliasson, and put the burden on her to connect him with other employees of Sway to verify her allegations.  Several weeks after her initial interview with the investigator, Menendez was still employed at Sway.  Based on his continued employment, Eliasson felt she could no longer come to work.  Finally, when Sway became aware that Eliasson had retained legal counsel, it fired Menendez.

On June 3, 2018, Eliasson sued Sway, Sevigny, McPeck, and Menendez in the State Court Action, which was dismissed without prejudice on November 27, 2018.  As alleged in the Federal Court Action, following the filing of the State Court Action, numerous women came forward with accounts of Menendez's sexually violent and predatory behavior.  These accounts are detailed in the

complaint filed in the Federal Court Action on December 18, 2018.

The complaint in the Federal Action included nine causes of action and named the same defendants.  It alleged Title VII discrimination and retaliation claims against Sway; New York State and City law claims of hostile work environment, sexual harassment, gender discrimination, and retaliation against all of the defendants; a New York City law claim for gender-motivated violence against Menendez; and assault and battery claims against Menendez.

II.  The Hamilton Policy

Sway's insurance policy with Hamilton covers the period November 11, 2016 through November 11, 2017 (the "Hamilton Policy").  It therefore covered the date on which the assault is alleged to have occurred.

The Hamilton Policy provides coverage for both Commercial General Liability and Liquor Liability, each with a $1 million per occurrence limit and a general aggregate limit of $2 million.  The Hamilton Policy also provides limited coverage for assault or battery related claims.  It states in relevant part:

> [T]his insurance applies to any loss . . . including claims . . . for negligence, directly or indirectly arising out of, actually or allegedly arising out of, or related to any: assault, battery, molestation, abuse, [or] harmful or offensive contact . . . whether committed by a . . . employee, or any other individual.

4

Sway paid annual premiums of $58,792 for the Hamilton Policy.

Pursuant to its "Other Insurance" provision, the Hamilton Policy provides that it would constitute primary insurance except in certain circumstances not relevant here.  In the event that another policy held by Sway also is primary insurance, the following method of sharing applies:

> If . . . the other insurance permits contribution by equal shares, we will follow this method also.  Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.
>
> If . . . the other insurance does not permit contribution by shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

III. The Kinsale Policy

Sway's insurance policy with Kinsale covers the period January 23, 2018 through January 23, 2019 (the "Kinsale Policy").  This period begins after the alleged assault, but covers the period of Eliasson's report to Sway and its investigation of her report, as well as the dates for the filing of both the State Court and Federal Court Actions.

The Kinsale Policy provides Employment Practices Liability with a $500,000 per occurrence limit and an aggregate limit of $500,000.  Up to this amount, Kinsale must pay for a claim for a "wrongful act," that is defined, in relevant part, as follows:

[A]ny actual or alleged:

1. Violation of any federal, state, local or common law, prohibiting any kind of employment-related discrimination;

2. Harassment, including any type of sexual or gender harassment . . . ;

3. Abusive or hostile work environment;

4. Wrongful discharge or termination of employment, whether actual or constructive; . . .

7. Wrongful failure or refusal to provide equal treatment or opportunities; . . .

9. Wrongful failure or refusal to adopt or enforce adequate workplace or employment practices, policies or procedures; . . .

12. Retaliation, including retaliation for exercising protected rights, [or] supporting in any way another's exercise of protected rights . . . ;

but only if the [wrongful act] is committed by an 'insured' and directed against the 'organization's' past, present, or future 'employee' . . . .

The Kinsale Policy also requires Kinsale to defend the insured against a covered claim.

The Kinsale Policy only applies, however, if "[p]rior to the effective date of this Policy, no 'insured' had any knowledge of any 'wrongful act' that could reasonably give rise to a 'claim' under this Policy" (the "Prior Knowledge Exclusion"). "Insured" is defined to include the "organization," or any "insured person," which includes any "employee." Under its section entitled "Exclusions," the Kinsale Policy provides that it does not apply to, among other things, any claim for loss "[b]ased upon, arising out of or in

6

any way involving any criminal act" (the "Criminal Act
Exclusion").

Pursuant to the Kinsale Policy's "Other Insurance"
provision, the Kinsale Policy provides that it is primary
insurance.  The Kinsale Policy, however, does not specify a
method of sharing in the event that Sway had another primary
insurance plan.

IV.   Coverage of the Underlying Action

On June 11, 2018, Kinsale issued a "Disclaimer of Coverage"
indicating its refusal to provide a defense or indemnification
to Sway for the State Court Action.  On June 7, 2019, Kinsale
issued a "Disclaimer of Coverage" as to the Federal Court
Action.  Among other things, Kinsale argued that the Underlying
Action was excluded from coverage under the Criminal Act and
Prior Knowledge Exclusions of the Kinsale Policy.

On July 11, 2018, Hamilton accepted Sway's tender for the
State Court Action subject to a reservation of rights, and
provided a defense for the Federal Court Action.  Ultimately,
Sway settled with Eliasson for $850,000, an amount that was
fully funded by Hamilton.  Hamilton has spent an additional
$34,273.04 in defense costs associated with the Underlying
Action.

V.    Procedural History

On June 3, 2019, Hamilton filed this action seeking a
declaratory judgment that it is entitled to reimbursement from
Kinsale for Kinsale's proportional share of the settlement and
defense costs paid by Hamilton.  According to Hamilton, Kinsale
and Hamilton should equally share the settlement and defense
costs for the Underlying Action.

On February 28, 2020, the parties informed the Court that
they did not believe that there were any disputed issues of
material fact and consented to trial on submission.  The same
day, they filed their pretrial order, proposed findings of fact
and conclusions of law, and pretrial memoranda of law.  On March
6, 2020, the parties filed their responsive memoranda
submissions.

The parties have agreed upon the relevant documents to be
received into evidence in this trial.  These include the
Hamilton and Kinsale Policies, the complaints from the State and
Federal Court Actions, and the Disclaimers of Coverage issued by
Kinsale.  The parties also have agreed that no live testimony,
citations to sworn testimony, or affidavits are needed to
resolve their dispute.

## **Discussion**

The parties have not addressed the issue of which law
applies to this contractual dispute.  The parties' memoranda of

law and their proposed conclusions of law, however, apply New
York law.  "Federal courts sitting in diversity look to the
choice-of-law rules of the forum state."  Int'l Bus. Machs.
Corp. v. Liberty Mut. Ins. Co., 363 F.3d 137, 143 (2d Cir.
2004).  An agreement between the parties to apply New York law,
even where that agreement is implicit, is sufficient to
establish the appropriate choice of law.  Krumme v. WestPoint
Stevens Inc., 238 F.3d 133, 138 (2d Cir. 2000); see also Fed.
Ins. Co. v. Am. Home Assur. Co., 639 F.3d 557, 566 (2d Cir.
2011).  Accordingly, New York law applies.

"Under New York law, an insurance contract is interpreted
to give effect to the intent of the parties as expressed in the
clear language of the contract."  Morgan Stanley Grp. Inc. v.
New England Ins. Co., 225 F.3d 270, 275 (2d Cir. 2000) (citation
omitted).  "The initial interpretation of a contract is a matter
of law for the court to decide."  Id. (citation omitted).  "Part
of this threshold interpretation is the question of whether the
terms of the insurance contract are ambiguous."  Id. (citation
omitted).  Language in an insurance contract is ambiguous if it
is

> capable of more than one meaning when viewed
> objectively by a reasonably intelligent person who has
> examined the context of the entire integrated
> agreement and who is cognizant of the customs,
> practices, usages and terminology as generally
> understood in the particular trade or business.

Olin Corp. v. Am. Home Assur. Co., 704 F.3d 89, 99 (2d Cir. 2012) (citation omitted); In re Prudential Lines Inc., 158 F.3d 65, 77 (2d Cir. 1998).  Contract language is unambiguous if it "provides a definite and precise meaning, unattended by danger of misconception in the purport of the contract itself, and concerning which there is no reasonable basis for a difference of opinion."  Olin Corp., 704 F.3d at 99 (citation omitted).

    If a court determines that the terms at issue are unambiguous, the terms are given their plain and ordinary meaning and the court will not consider extrinsic evidence in aid of assigning meaning to these terms.  Id.; In re Prudential Lines Inc., 158 F.3d at 77; see also Alexander & Alexander Servs., Inc. v. These Certain Underwriters at Lloyd's, London, England, 136 F.3d 82, 86 (2d Cir. 1998).  If, on the other hand, a court determines that contract language is ambiguous, it may consider "any available extrinsic evidence to ascertain the meaning intended by the parties during the formation of the contract."  Alexander & Alexander Servs., Inc., 136 F.3d at 86; see also British Int'l Ins. Co. Ltd. V. Seguros La Republica, S.A., 342 F.3d 78, 82 (2d Cir. 2003).  If policy language is ambiguous, New York law provides that such ambiguities must be construed against the insurer.  See Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co., 600 F.3d 190, 201 (2d Cir. 2010).

Kinsale argues that the Underlying Action is excluded from coverage under the Criminal Act Exclusion.[1]  The Criminal Act Exclusion of the Kinsale Policy excludes coverage for claims that are "[b]ased upon, arising out of or in any way involving any criminal act."

Under New York law, an insurer bears the burden of establishing that a claim falls within the scope of an exclusion.  MBIA Inc. v. Fed. Ins. Co., 652 F.3d 152, 165 (2d Cir. 2011).  "To negate coverage by virtue of an exclusion, an insurer must establish that the exclusion is stated in clear and unmistaken language, is subject to no other reasonable interpretation, and applies in the particular case."  Village of Sylvan Beach, N.Y. v. Travelers Indem. Co., 55 F.3d 114, 115-16 (2d Cir. 1995) (citation omitted).  As stated by the New York Court of Appeals, "the language of the policy controls" the question of coverage.  Mount Vernon Fire Insurance Company v. Creative Housing, 645 N.Y.S.2d 433, 435 (N.Y. 1996).

The New York Court of Appeals has recognized that "[t]here is no significant difference between the meaning of the phrases 'based on' and 'arising out of' in the coverage or exclusion

---

[1] Because Kinsale succeeds in excluding coverage under the Criminal Act Exclusion, it is unnecessary to reach its contention that coverage is also properly excluded because of insured's knowledge of the wrongful act prior to the beginning of the policy period.

11

clauses of an insurance policy," and that these phrases are not ambiguous.[2]  Fed. Ins. Co. v. Am. Home. Assur. Co., 639 F.3d 557, 568 (2d Cir. 2011) (citation omitted).  In the context of insurance policies that exclude claims that are "based on" or "arising out of" certain conduct, the Court of Appeals has instructed courts to employ a "but for" test that looks to the nature of the underlying conduct, i.e., the "operative act," in order to determine whether a certain occurrence is covered or excluded from coverage.  Mount Vernon, 645 N.Y.S.2d at 434-35; see also U.S. Underwriters Ins. Co. v. Val-Blue Corp., 623 N.Y.S.2d 834, 836 (N.Y. 1995).  As explained by the Court of Appeals, this test dictates that "if no cause of action would exist but for [an] assault, the claim is based on assault and the exclusion applies."  Mount Vernon, 645 N.Y.S.2d at 434.

In addition to excluding claims "based on" and "arising out of" any criminal act, the Criminal Act Exclusion of the Kinsale Policy excludes claims "in any way involving any criminal act." This term dictates that the exclusion be read broadly.  See, e.g., Nomura Holding Am., Inc. v. Fed. Ins. Co., 45 F. Supp. 3d 354, 374 (S.D.N.Y. 2014) (collecting cases); Pereira v. Nat'l

---

[2] According to the New York Court of Appeals, these phrases are "ordinarily understood to mean originating from, incident to, or having connection with."  Fed Ins. Co, 639 F.3d at 568 (citation omitted).

Union Fire Ins. Co., 525 F. Supp. 2d 370, 378 & n.16 (S.D.N.Y. 2007).

The Criminal Act Exclusion of the Kinsale Policy unambiguously excludes coverage of the Underlying Action. Eliasson's claims against the defendants in the Underlying Action would not exist but for the sexual assault by Menendez. See Mount Vernon, 645 N.Y.S.2d at 434.  The conclusion that coverage is excluded is bolstered by the clause of the Criminal Act Exclusion excluding claims "in any way involving any criminal act."  There can be no doubt that all of the claims alleged in the Underlying Action, including those of hostile work environment, sexual harassment, gender discrimination, and retaliation, "involve[ed]" in some way the sexual assault by Menendez.  Because the language of the policy controls, the Criminal Act Exclusion must be read to exclude coverage of the Underlying Action.

In arguing that the Underlying Action is not excluded from coverage under the Criminal Act Exclusion, Hamilton points to an Appellate Division case that parts ways with New York Court of Appeals precedent applying the but-for causation test.  See Watkins v. Glen Cent. School Dist. V. Nat'l Union Fire Ins., 732 N.Y.S.2d 70 (App. Div. 2001).  In Watkins, the Second Department determined that an exclusion for "claims arising from assault and battery" should not be read to exclude coverage of negligent

13

hiring and supervision claims against a school whose teacher

sexually assaulted his students, because the insurance policy

was one for errors and omissions.[3]  Id. at 71-72.  The Second

Department reasoned that it was not compelled to follow Court of

Appeals precedent applying the but-for causation test because

those cases involved general liability, not errors and

omissions, policies.  Id. at 73-74.  Because an errors and

omissions policy "is expressly intended to provide coverage for

negligent acts, including negligence in the hiring or

supervision of employees," the Second Department reasoned,

"[a]pplication of the cited exclusions . . . would effectively

eviscerate the errors and omissions policy altogether."  Id. at

74.

Watkins is inapposite for several reasons.  First, the

Kinsale Policy is not an errors and omissions policy.  Second,

in contrast to Watkins, applying the Criminal Act Exclusion to

preclude coverage of the claims at issue in the Underlying

Action -- hostile work environment, sexual harassment, gender

discrimination, and retaliation -- would not eviscerate the

purpose of the Kinsale Policy.  As Kinsale explains, these types

---

[3] An errors and omissions policy "effectively provides
malpractice insurance coverage to members of professions other
than those in the legal and medical fields."  Watkins, 732
N.Y.S.2d at 72.  Such policies "generally provide coverage for
acts of negligence and do not insure against intentional acts."
Id.

14

of claims would still be covered when they are in connection with conduct that is not based on, arising out of, or in any way involving a criminal act.  That should include a large universe of workplace claims for a business such as Sway.  Third, the contractual language in Watkins was not as broad as the Criminal Act Exclusion.  In Watkins, the term excluded "claims arising from assault and battery," id. at 71, while here the term excludes claims "[b]ased upon, arising out of or in any way involving any criminal act."  Given these important differences, whether taken singly or together, there is no basis to find that Watkins controls the outcome here.

Hamilton also contends that the Underlying Action should not be excluded under the Criminal Act Exclusion because Menendez was not criminally prosecuted for the sexual assault alleged by Eliasson.  Thus, while Hamilton does not dispute that Eliasson's sexual assault allegations describe criminal conduct, Hamilton contends that the absence of a criminal indictment and/or conviction precludes application of the Criminal Act Exclusion.  The Criminal Act Exclusion, however, plainly states that it is a criminal "act," not a criminal indictment or conviction, that triggers the exclusion.  Based on the plain language of the contract, it is the nature of the conduct and not the decision of a prosecutor to pursue charges or the prosecutor's success in obtaining a conviction that controls.

After all, there may be many reasons for a prosecutor to
exercise its discretion and not pursue a particular prosecution
even when there is no reasonable dispute that a crime occurred.

Finally, Hamilton argues that the Underlying Action is not
excluded under the Criminal Act Exclusion because Eliasson's
complaint includes allegations of Sway's "disparate treatment
towards female workers" that have no connection to the alleged
criminal act by Menendez.  These include allegations that Sway
did not allow women to work behind the bar or in management
roles and allowed male staff to consume alcohol during their
shifts.  While these allegations were apparently included to
provide context and explain Sway's delay in responding to
Eliasson's report, it was the assault that prompted the lawsuit
and stood at the center of each of the claims pleaded in the
complaint -- hostile work environment, sexual harassment, gender
discrimination, retaliation, and assault and battery -- and
Hamilton does not argue otherwise.  This final argument
therefore is without merit.

## Conclusion

Kinsale is not required to cover the costs sought by
Hamilton because coverage of those costs is excluded pursuant to

16

the Kinsale Policy's Criminal Act Exclusion.  The Clerk of Court

shall enter judgment for Kinsale and close this case.


Dated:    New York, New York
          April 15, 2020


                                _____
                                   DENISE COTE
                                United States District Judge


                                  17